PEOPLE ex rel. BOARD OF CHARITIES v. DAVIS. 209

Fourth Department, October Term, 1878.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE BOARD OF CHARITIES OF THE CITY OF UTICA, Appellants, v. GEORGE E. DAVIS, Respondent.

*Court of Sessions—appeals from, under §§ 1340, 1357, Code of Civil Procedure— Delegation of authority—when void—chap. 30 of 1873.*

The Court of Session, is a court of original jurisdiction, within the meaning of, sections 1340 and 1357 of the Code of Civil Procedure, authorizing appeals to the Supreme Court from final judgments, and orders affecting substantial rights of courts of record possessing original jurisdiction

The Board of Charities of the City of Utica have no authority, under chapter 30 of 1873, to adopt a resolution authorizing, in advance, the clerk to commence and carry on, in its name, any and all prosecutions in cases of alleged bastardy, without further order of the board.

Appeal from an order and judgment of the Court of Sessions of Oneida county, vacating and setting aside an order of filiation made by two justices of the peace of the city of Utica. And a motion to dismiss such appeal.

The order of the justices was set aside on the ground that they acted without jurisdiction, no proper allegation having been made to authorize the issuing of the warrant against the defendant. On vacating the order, the Court of Sessions held the defendant to bail, pursuant to the statute (1 R. S., 650, § 39), for his appearance at the next Court of Sessions.

*J. I. Sayles*, for the appellants.

*W. A. Matteson*, for the respondent.

Smith, J.:

A motion to dismiss the appeal is submitted with the appeal. One of the points taken in support of the motion is that no appeal lies to this court to review the order and judgment of the Court of Sessions; that the remedy is by *certiorari*. We think the right of appeal is given by the Code of Civil Procedure. Section 1340 of that Code, provides that "an appeal may be taken to the Supreme Court, from a final judgment, rendered by a county court, or by any other court of record possessing original juris- diction, where an appeal therefrom to a court other than the

Supreme Court is not expressly given by statute." A Court of Sessions is a court of record (Code of Civil Procedure, § 1, subd. 14.) Whether it is a court of original jurisdiction, within the meaning of section 1340, is not so clear. Mr. Throop, in his note to the section, says the expression "possessing original jurisdiction" was inserted for the purpose of excluding the Court of Appeals from the broad language used in the section. Unfortunately, the section itself does not distinctly convey the meaning expressed in the note, and the only way to determine whether courts of sessions are included, is to ascertain whether they possess original jurisdiction. The inquiry has no reference, of course, to their jurisdiction in criminal matters. It is provided by statute that a Court of Sessions may make an original order of filiation, in a case where the same court has granted a justices' order of filiation and maintenance, for any other reason than upon the merits and facts. (1 R. S., 650, § 39.) There may be other cases in which a Court of Sessions may exercise an original jurisdiction, in matters other than criminal, but none occur to us. But we think the single case of such jurisdiction, above adverted to, is enough to warrant the conclusion that courts of sessions possess original jurisdiction within the meaning of section 1340. By the same construction, courts of sessions are included in section 1357 of the same Code, which gives the right of appeal to the Supreme Court, from an order, affecting a substantial right made by a court of record possessing original jurisdiction.

As we are of the opinion that the appeal was properly taken, and are also of the opinion that the order and judgment appealed from should be affirmed, for reasons which will be stated presently, we do not consider the other points on which a dismissal of the appeal is asked for, but proceed at once to state our views of the questions involved in the appeal.

The application to the justice of the peace for the warrant which preceded the order of filiation was made by Martin Neejer, who described himself therein as " Clerk of the Board of Charities of the Town of Utica." It is contended by the appellant that Neejer had no authority to make the application as clerk of the board of charities, or otherwise, and that it did not give the justice jurisdiction. We think the position is well taken. The city of Utica

was formerly subject to the general statute, which provides that, when a child is likely to be born a bastard, and to become chargeable to a city or town, the superintendents of the poor of the county, or the overseers of the poor of the town or city, where the woman pregnant of such child shall be, may apply to some justice of the peace to make inquiry, etc. (1 R. S., 642, § 5.) By chapter 30 of the Laws of 1873, the Legislature created " The Board of Charities of the City of Utica," and gave to such board the same powers as were theretofore possessed by overseers of the poor (§ 7); and, by the same act, the office of overseer of the poor of the city of Utica was abolished. (§ 16.) The board was authorized to elect a clerk. (§ 7.) The clerk shall not be a member of the board (§ 7), and he is required to keep a record of the proceedings of the board. (§ 8.) It appears in evidence that Neejer was the clerk of the board; and that, about two years before the proceedings against the respondent were instituted, the board adopted a resolution purporting to authorize the clerk to commence and carry on any and all prosecutions, in the name of the board, in cases of alleged bastardy, under the statute, without further order of the board. Whatever authority Neejer had to make the application was conferred by that resolution. Waiving the objection that his application was made in his own name, with the description of clerk, etc., added, and not in the name of the board, we are of the opinion that the board, in adopting the resolution, exceeded their powers. The act of determining whether an application should be made to a justice, in a given case, involves the exercise of judgment or discretion. The power can only be exercised by the board, when duly convened, and cannot be delegated. The board, after deciding to make such application in a particular case, may, doubtless, authorize their clerk, or any other suitable person, to make the application, in the name of the board; but they cannot, by general resolution, authorize the clerk, in advance, to make an application in any and all cases that may rise. The rule is, that an authority to do acts merely ministerial or mechanical may be delegated; but not so when the act involves the exercise of judgment or discretion. (*Powell* v. *Tuttle*, 3 Comst., 396.)

It is suggested by the respondent's counsel that the resolution of the board was authorized by section 10 of the act creating the

board. That is a misapprehension. Section 9 of the act authorizes the board to appoint not exceeding two persons, to aid in the discharge of the duties of the board, and that the special duty of the persons so appointed shall be to personally investigate the character, habits, location of residence, condition and necessities of all applicants to the board for assistance and relief. Section 10 provides that the board shall adopt uniform rules and regulations, by and under which such assistance or relief shall be administered. It is apparent that these provisions relate merely to the ministerial duties of furnishing relief to such applicants as may be found, on investigation, to be suitable objects of public charity, and have no reference to the duty of instituting complaints in cases of bastardy.

This construction is fortified by an act passed by the Legislature, at its last session, amending section 14 of the act creating the Utica Board of Charities. That section originally provided that all orders for assistance and relief to destitute applicants, and all commitments to the county poor-house, or to the State lunatic asylum, * * * "shall be issued by the clerk of the board, but no such order or commitment shall be issued, except by the order of said board, under special or general rules and regulations thereof authorizing the same." By the amendment, the section was made to include, also, "all proceedings in relation to bastardy," and to direct that all "orders," "commitments" and "proceedings" therein provided for should be issued, made, instituted and had by the clerk, "in the name of the board." (Laws of 1878, chap. 91.) Whether the resolution of the board above referred to would have been a valid delegation of authority to the clerk, under the act as amended, it is needless to decide, as the question does not now arise. But the amendment is a very clear legislative expression, to the effect that, prior to the amendment, the board had not power, by general regulation, to delegate to its clerk authority to institute proceedings in cases of bastardy; otherwise the amendment was unnecessary.

The motion to dismiss should be denied, without costs, and the order and judgment appealed from affirmed, with costs.

Talcott, P. J., and Noxon, J., concurred.

Motion to dismiss appeal denied, without costs, and the order and judgment appealed from affirmed, with costs.